**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John HEDMAN, Michael Jercich, Thomas
Karnick and Henry Larsen,
Defendants-Appellants.**

**No. 81–1128.**

United States Court of Appeals,
Seventh Circuit.

Argued May 15, 1981.

Decided Aug. 3, 1981.

Rehearing Denied Sept. 9, 1981.

Anna R. Lavin, Calihan & Lavin, Chicago, Ill., for defendants-appellants.

James R. Ferguson, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before BAUER, Circuit Judge, NICHOLS, Judge,* and WOOD, Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

Defendants Hedman, Jercich, Karnick and Larsen appeal from the district court's action denying without a hearing their request for a new trial on the basis of newly discovered evidence. Defendants are former Chicago building inspection supervisors. In 1978, following a joint trial, a jury found them guilty of violating various federal statutes by extorting money from city building contractors and failing to report the illegal gains on their federal income tax returns.[1] The convictions were upheld on appeal, 630 F.2d 1184 (7th Cir. 1980), *cert. denied*, 450 U.S. 965, 101 S.Ct. 1481, 67 L.Ed.2d 614 (1981). Defendants asked the district court for a new trial because they say new evidence shows the prosecution in-

---

\* The Honorable Philip Nichols, Jr., Judge of the United States Court of Claims, is sitting by designation.

1. The illegal payments were received in return for the supervisors' ignoring building violations

in the construction of garages, porches and other additions to existing structures. Defendant Karnick was not charged with tax violations. Defendant Jercich was found not guilty on one of the extortion counts.

troduced a falsified document in its case against them, and coerced a witness to testify falsely on behalf of the government. Judge Bua, who presided at the original trial, denied the request for a new trial after receiving from the government an answer to the request.[2] We affirm.

Defendants first contend that they are entitled to a hearing on their claim that the government used a falsified document to support its case. The document is a business diary kept by one of the building contractors who made illegal payments to defendants. The diary details the amount and recipient of each payment. Prior to trial, the prosecution submitted for chemical analysis two pages of the diary about which there was some question as to authenticity. One of the pages appeared to be a hand copied duplicate of the other, with certain changes. The analysis revealed that some of the ink used to obliterate a name on one of the pages was a type first manufactured well after the date on which the diary entries purportedly were made.

Upon learning the results of the analysis, the prosecution immediately contacted defense counsel. This occurred on a Thursday, five days before trial. On the day of trial defendants sought a continuance to allow chemical analysis of the entire diary, claiming the document was a fraud. The district judge denied the motion for continuance.[3] The diary was received in evidence during the trial.

Defendants now assert that facial discrepancies in the diary and statements made after trial by a government agent and the person who kept the diary lend credence to their claim that the ink analysis shows the diary is fraudulent, and thus its admission amounted to the use of perjured testimony. They seek a new trial under Rule 33 of the Federal Rules of Criminal Procedure, or upon a writ of error *coram nobis*, and claim the district court erred in failing to hold a hearing on their request.

■ It is within the sound discretion of the district court to decide whether or not a hearing is necessary to a determination on a request for a new trial. *Eaton v. United States*, 458 F.2d 704 (7th Cir.), *cert. denied*, 409 U.S. 880, 93 S.Ct. 208, 34 L.Ed.2d 135 (1972); *United States v. Williams*, 615 F.2d 585 (3d Cir. 1980). In order to establish that a new trial is warranted on the basis of new evidence under Rule 33 of the Federal Rules of Criminal Procedure, defendants must show that the evidence (1) came to their knowledge only after trial; (2) could not have been discovered sooner had defendants exercised due diligence; (3) is material, and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a retrial. *United States v. Robinson*, 585 F.2d 274, 277 n.4 (7th Cir. 1978) (en banc). The showing necessary for a new trial upon a writ of error *coram nobis* is "of the same general character as one under 28 U.S.C. § 2255." *United States v. Keogh*, 391 F.2d 138, 140 (2d Cir.

2. Judge Bua's denial reads as follows:

The defendants' motion for a new trial, as amended, is Denied. Concerning the defendants' contentions as to the Weitzman diary, the court is not convinced that the material in question could not, upon the exercise of due diligence, have been discovered before or during trial. *United States v. Robinson*, 585 F.2d 274 (7th Cir. 1978); *United States v. Hedgeman*, 564 F.2d 763 (7th Cir. 1977). As to the defendants' contentions regarding John S. Gagliano, the court believes that the affidavit of AUSA John Newman is adequate to both rebut the allegations contained in the Gagliano affidavit, and to establish that wrongful conduct on the part of the Government sufficient to warrant a new trial did not occur. That being so, the court believes that

a hearing as to this contention is also unnecessary.

Judge Bua re-affirmed his ruling in a one-sentence order released a week later.

3. Government counsel stated during argument on the motion for continuance that it would take six months to analyze the remainder of the lengthy diary, the two pages having been analyzed on an expedited basis. He noted, too, that the unusual ink markings appeared to be confined to the single page at issue, and argued that if anything the analysis confirmed the integrity of the rest of the diary. He also pointed out that defendants waited until the day of trial to request the continuance, even though they had known the details of the analysis for five days.

1968). *See Robinson*, 585 F.2d at 279. Relief thus is available only if the asserted error is jurisdictional or constitutional, involves an error of law that results in a complete miscarriage of justice and presents exceptional circumstances where a remedy in the nature of a writ of habeas corpus or error *coram nobis* will lie. *See Robinson*, 585 F.2d at 278 n.5. In addition, to the extent that their claimed entitlement to relief through a writ of error *coram nobis* is based on newly discovered evidence, the defendants must show that due diligence on their part could not have revealed the evidence prior to trial. *Robinson*, 585 F.2d at 279. Judge Bua concluded that defendants had not met the "due diligence" requirement.

Defendants' argument begins with the assertion that post-trial statements by a government agent and the man who kept the diary cast doubt on the diary's integrity, in particular suggesting that some pages were removed or altered to help perfect the government's case. The post-trial statements, say defendants, caused them to take a new look at the diary. The newer, closer examination revealed "facial discrepancies," namely that the diary does not list extortion payments in one quarter of Chicago's building inspection jurisdictions, suggesting, it is claimed, that someone tampered with the pages to remove evidence of payments in those jurisdictions.

Considering first the "discrepancies" that purportedly impugn the diary's integrity, we have no hesitation in concluding, as did Judge Bua, that the information could have been discovered with due diligence by defendants before trial, and that no hearing was necessary to consider the request for a new trial. To begin with, defendants received a photocopy of the diary well in advance of trial. Even before being alerted to the ink analysis results, defendants had taken it upon themselves to search for errors in the diary, as is clear from their argument at the pre-trial motion for continuance that the diary appeared to be a loose leaf binder, susceptible to fraudulent shifting of pages. And, as is apparent from defendant Hedman's post-trial "memorandum" on the alleged discrepancies,[4] the defense searched the diary for errors before trial, but simply overlooked the things to which they now draw our attention.

It is clear that the "discrepancies" could have been found had defendants exercised proper diligence before trial.[5] To hold that this inattentiveness on defendants' part entitles them to a new trial would reward their dilatory actions. This would be especially inappropriate here since, as discussed below, there is no indication that defendants were incorrectly named in the diary as accepting bribes. The district court properly exercised its discretion to resolve defendants' contentions without a hearing.

The ink analysis likewise provides these defendants no succor. They were aware of the analysis in advance of trial. The analysis itself revealed only that a single name had been crossed off the page sometime after the page purportedly was penned. Defendants do not claim that the same ink used to obliterate the name appears on other pages of the diary, but only vaguely suggest that one other page displays some ink of the same color. And only now do defendants claim that the district court's denial of a continuance on the first day of trial prevented them from adequately pursuing their forgery and alteration theories at trial. Defendants, moreover, fail to explain why, if the results of the ink analysis were so important to them, they did not conduct their own analysis immediately after trial, at least on the pages about which they had the greatest doubt. Defendants offer no new evidence about the import of

---

4. The memorandum was included as an exhibit before the district court in defendants' motion for a new trial.

5. Defendants themselves characterize the alleged discrepancies as "facial," meaning they contain errors that "no reproduction, however shallow, will conceal." Reply Brief For Defendants-Appellants at 7. If this is so, we can see no reason, nor have defendants presented one, why a duly diligent glance at the face of the diary would not have revealed the discrepancies at trial.

the ink analysis, but only new suspicions. The existence of *some* new evidence is a prerequisite to granting a new trial on the basis of newly discovered evidence. In this posture, the district court's denial of the new trial motion did not require a hearing.

Defendants claim that certain statements made after trial by Harry Weitzman, the person who kept the diary, entitle them to a hearing on their request for a new trial. Defendant Karnick submitted an affidavit quoting Weitzman as saying, "I did not want to hurt you boys, but they made me do it"; "They said we would lose the business. . . . They would take it away from us." The affidavit also quotes Weitzman as saying, "I can't understand why more than four were not involved. There were so many more names in the book, I don't understand why they just took your names." Defendants have not submitted a supporting affidavit from Weitzman.

Defendant Karnick's self-serving affidavit would not have affected the jury's verdict, and, as the district court concluded in denying the new trial motion, reflects an absence of due diligence on defendants' part. In regard to the affidavit's probative value, we note that Weitzman's remorse at testifying against those he considered friends is understandable. There is, however, no doubt from the rest of Weitzman's statements that defendants' names in fact appear in his diary as those to whom bribes were paid, which if anything reinforces rather than diminishes support for the jury's finding that defendants are guilty of receiving bribes. Nothing in defendant Karnick's affidavit suggests that Weitzman was coerced into saying anything false. Rather, as the prosecution made clear at trial, Weitzman traded immunity for his testimony, the truth of which has not been shaken.

Nor are defendants aided by Weitzman's reference to other, unindicted inspection supervisors whose names he said he entered in the diary. The United States Attorney's Office acknowledged to defendants before trial that two of those names were people who might be considered co-conspirators, but whom the government elected not to prosecute. At trial the prosecution elicited from Weitzman those names and that of a third inspection supervisor listed in the diary who was not indicted. Weitzman testified that those three names were the only ones in addition to defendants' that appeared in the diary.

As noted, nothing in the statement attributed to Weitzman indicates that defendants' names were not properly listed in the diary. And the statements attributed to Weitzman do not say that he lied at trial when he testified that the names elicited from him by the government were the only ones in the diary. Nor is Weitzman purported to have said that the diary was altered in any manner, but only that he did not understand why the others listed in it were not prosecuted. In short, defendant Karnick's affidavit is probative of nothing material to defendants' case.

Finally, the affidavit does not reveal why defendants were unable to secure Weitzman's statement at some earlier point. Since Weitzman's statement does not recant his testimony, it is incumbent on defendants to explain why they did not question Weitzman on these points at or before trial. This is all the more important where, as here, the defense was concerned even before trial with the possibility that someone had tampered with the diary. Defendants' obvious lack of diligence, both at the original trial and in support of their request for a new one, justified the district court's denial of the request without a hearing.

The last item defendants say support their claim to a hearing in connection with the diary is a statement allegedly made to defendant Karnick's brother Kevin by a special agent of the Internal Revenue Service during the pendency of the original appeal. According to Kevin Karnick, in response to his comment that he thought one issue on appeal concerned the diary, the agent said, "[y]ou mean about it being a phoney. . . . [W]e knew that before. Some of the pages had too many names on them so they had to be scratched." Defendants asked this court in the original

appeal to remand so that the district court could determine what significance the agent's alleged comments had on their arguments about the integrity of the diary. This court denied the motion to remand, noting that the panel had read the IRS investigation report on the agent's "'improper statements' ... which purported to impugn the integrity of the diary." 630 F.2d at 1197 n.9. The panel concluded that the agent's statements questioning the diary's integrity, detailed in the report, was not required to be produced pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), as exculpatory or material to defendants' case.

At the outset, we note that the comments attributed to the agent are quite vague. If anything, it appears from the context of the conversation that the agent was saying the government knew that defendants' concern about the diary's integrity would be an issue on appeal. And the reference to names being "scratched" seems directed to the reasons why Weitzman might have crossed off a name long after writing it, as revealed by the ink analysis. The agent's comments do not appear to suggest that someone *fraudulently* altered the diary.

But this court's decision on this issue in the original appeal renders the question moot. Defendants do not explain how statements held to be neither exculpatory nor material entitle them to a new trial. The district judge was not obliged to hold a hearing when he denied the motion for a new trial on this point. *See Tucker v. United States*, 427 F.2d 615 (D.C.Cir.1970) (no hearing necessary when grounds for relief previously determined on merits).

Apart from the issues pertaining to the diary, defendants also claim that they are entitled to a hearing on their request for a new trial based on a notarized statement by a government witness recanting his testimony. The testimony, which the jury was instructed to apply only to defendant Hedman, relates to the process by which the bribes were passed to participating building inspection supervisors. The witness, John Gagliano, claims in a statement drawn up after a post-trial meeting with defendant Karnick that the government "brainwashed" him and threatened him with imprisonment if he did not testify as the prosecution wished. In response to this statement, the government filed an affidavit of the assistant United States Attorney who prosecuted defendants' case, and who Gagliano named as the coercive government counsel. The prosecutor's affidavit denies each of Gagliano's allegations. The district court found the affidavit sufficient to rebut Gagliano's claim of prosecutorial impropriety without the necessity of a hearing. We agree.

As noted above, we treat defendants' request for a writ of error *coram nobis* as similar in character to a request under 28 U.S.C. § 2255. It often is true in Section 2255 cases that the existing record and the court's recollection obviate the need for a hearing where, as here, the judge entertaining a request for a new trial also presided at the original trial. *See Machibroda v. United States*, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). Factual allegations such as those presented by defendants which relate to occurrences outside the courtroom may weigh in favor of a hearing in many circumstances. "Yet every [such] allegation ... does not establish the necessity for a hearing on the allegations, no matter 'how vague, conclusory, or palpably incredible' they may be." *United States v. Huffman*, 490 F.2d 412, 413 (8th Cir. 1974). The district judge retains discretion to exercise his common sense. *See Machibroda*, 368 U.S. at 495, 82 S.Ct. at 514; *Franklin v. United States*, 589 F.2d 192 (5th Cir.), *cert. denied*, 441 U.S. 950, 99 S.Ct. 2177, 60 L.Ed.2d 1055 (1979).

As noted in *Huffman*, "[e]ach case must be determined upon its own facts." 490 F.2d at 414. Here, the district court during the original trial observed the demeanor of Gagliano and the assistant United States Attorney, both of whom submitted statements in connection with the request for a new trial. The district court's decision on the request thus was not made wholly upon a "paper" record. The prosecutor's affida-

vit flatly rebuts the charge that he threatened Gagliano or "coached" him on how to respond to specific questions at trial. And Gagliano explained at trial the circumstances under which his testimony was given. The issue was squarely presented to the district court, and defendants have not suggested what additional use a court hearing might serve.[6] This was enough to allow the district court conclusively to determine that defendants were not entitled to a new trial on the basis of Gagliano's post-trial statement, particularly in light of the disfavor with which courts view new trial motions based on recanted testimony. *See United States v. Johnson*, 487 F.2d 1278 (4th Cir. 1973).

At any rate, even if Gagliano's statement is assumed to be true, that would make no difference to the disposition of the request for a new trial. *See, Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); *Napue v. Illinois*, 360 U.S. 264, 271, 79 S.Ct. 1173, 1178, 3 L.Ed.2d 1217 (1959). Gagliano was not a material witness in the case. He testified that he received and passed on to Hedman checks containing extortion payments. The extortion victims who wrote the checks testified that Hedman solicited the payments and that checks were sent to Hedman's residence or personally delivered. Gagliano merely corroborated the victims' testimony as to some checks.

Under the circumstances of this case we conclude that the district court did not abuse its discretion in denying defendants' request for a new trial without holding a hearing. The district court's decision is Affirmed.

---

**6.** Defendants' papers filed before the district court indicate their belief that the government's affidavit does not directly rebut Gagliano's charges. Our review of the two statements shows that Gagliano contends only that he was threatened with prosecution, and told to testify in accordance with notes taken by the government counsel during a series of pre-trial interviews. The government's affidavit unequivocally states that government counsel never threatened Gagliano, that counsel took no notes during interviews with Gagliano, and did not tell him how to testify. A more thorough rebuttal of Gagliano would be hard to imagine, and more was not required.