MAROVITZ, Senior District Judge
(dissenting).
Because I believe that Cherek was convicted by a confused jury, I must respectfully dissent from the majority opinion. In my opinion it was error for the trial judge to refuse to answer the jury’s inquiry about question # 14 of the Statement of Affairs and the result of that error was a fundamentally unfair trial.
*1255 Cherek was charged with knowingly and fraudulently failing to disclose the existence of a particular corporate asset. As the majority points out, the two principal elements of the crime are: 1) concealment; and 2) knowledge and fraudulent intent. Cherek’s defense was based entirely upon his assertion that because he personally paid for the auto, he believed that it belonged to him and therefore he did not intend to fraudulently conceal an asset of the bankrupt corporation. The issue of the truthfulness of Cherek’s answer to question 14 was raised throughout the trial. Indeed, the prosecution strenuously attempted to get Cherek to admit on cross-examination that his answer to question 14 was incorrect based upon his transfer of possession of the auto to Donna Taylor in or about April 1979. Cherek consistently maintained that his answer to question 14 was correct because he personally was the owner of the auto rather than Delta Plumbing, the bankrupt corporation. (Tr. 10/25/82 p.m. p. 18-25)
Because of the way Cherek based his defense, the issue in the trial was not whether the auto was in fact owned by Delta Plumbing, or even titled in Delta Plumbing’s name, but whether Cherek subjectively thought that the auto belonged to him. If he so thought, then he lacked the requisite intent to defraud and was not guilty of the crime charged. It was in this regard that Cherek relied upon his answer to question 14 to establish his innocence, and it is in this regard that Cherek was entitled to have the jury understand the scope of question 14.
Question 14 required Cherek to report any transfer of assets of the bankrupt corporation within the past year. Cherek maintains that he reported “none”, not because he had not yet transferred title to the car to Donna Taylor (as the majority suggests), but because he honestly believed that the car belonged to him. The prosecution attempted to show Cherek’s intent to defraud by showing that he responded “none” to question 14 even though he had already transferred possession of the car to Donna Taylor prior to his filling out the Statement of Affairs. (Tr. 10/25/82 p.m. p. 18-25). Thus it was the prosecution that brought up question 14 in its attempt to prove fraudulent intent. When the. jury requested clarification of the scope of question 14, the jurors were obviously attempting to decide whether Cherek lied on the Statement of Affairs. Since the jurors were never told that question 14 did not encompass transfers of personal assets of the corporate officers, the jury obviously did not have the opportunity to understand .Cherek’s theory of the case; the fact that he thought the car was his and that he did not lie on the Statement of Affairs proves that he did not have the intent to fraudulently conceal an asset of the corporation.
The fact that the jury first requested a transcript of the indictment and later requested clarification of the scope of question 14 clearly indicated some confusion amongst the jurors. “[W]hen a jury shows confusion, a trial judge is under an obligation to respond ...” United States v. Bolden, 514 F.2d 1301 (D.C.Cir.1975). The majority seeks to distinguish Bolden by stating that in the instant case the jury’s question was not useful to the performance of its designated task. I respectfully disagree. The jury’s question clearly indicated that they were considering the fact that either the car actually belonged to Cherek or that he thought the car belonged to him, and the jurors wanted to know if he answered question 14 honestly. In my opinion this has a direct bearing upon the issue of intent. Thus, Bolden is not so easily distinguished, especially in light of the fact that the jury was confused over such a difficult legal issue as intent. Bolden, 514 F.2d at 1308.
The majority also attempts to rely on United States v. Papia, 561 F.2d 827 (7th Cir.1977) for the proposition that although under an obligation to clarify the confusion of a jury endeavoring to understand one of the initial instructions, a trial court acts within its discretion when it refuses to answer a potentially misleading question. There was, however, nothing misleading about the jury’s question in the instant *1256 case. The jurors asked a very simple question regarding the scope of question 14. All parties involved, including the trial judge, the prosecuting attorney, and the defense attorney agreed that the simple answer to the jury’s question was “No”. Under such circumstances, I believe that the trial judge’s obligation is to clear up the jury’s confusion with “concrete accuracy”. Bollenbach v. United States, 326 U.S. 607, 612-13, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946) The majority’s reliance on Pa-pia is misplaced. In Papia, this Court emphasized the fact that the question posed by the jury was not amenable to an unqualified yes or no answer. As the Court stated:
We believe that under the circumstances presented here an unqualified “Yes” or “No” answer would have been inappropriate.
Papia, 560 F.2d at 844. Since in the instant ease there was a simple unqualified answer to the jury’s question I can see no reason for failing to give that answer.
Both the trial judge and the majority seem to feel that to answer the jury's question would have resulted in encouraging the jury to consider matters irrelevant to the charge. As I have already explained, I think that Cherek’s answer to question 14 was germane to the issue of intent. Possibly more important however, is the fact that the trial judge refused to answer the jury’s question because he thought that it was outside the elements of the offense. (Tr. p. 4 10/25/82 7:30 p.m.) Yet the jury had already indicated some confusion over the scope of the offense by asking for a transcript of the indictment. This request was also refused. Thus the trial judge refused to answer the jury’s question because it was outside the scope of the charge even though he knew that the jury was confused about the scope of the charge. At this point an experienced trial judge should have realized that the jury was confused not only over the scope of the indictment, but also over how question 14 related to the charge and the issue of intent. If, as the majority states, “it is apparent that the jury was not putting the evidence to the uses directly helpful to performing the task it faced”, then it is also apparent that the jurors were confused as to just how that evidence related to their task. The discharge of the jury’s responsibility for drawing appropriate conclusions from the testimony necessarily depended upon the discharge of the judge’s responsibility to give the jury the required guidance by a lucid statement of the relevant legal criteria. Bollenbach, 326 U.S. at 612, 66 S.Ct. at 405. Because the judge failed to clear the jury’s confusion over how question 14 related to the issue of intent and the scope of the indictment, I must conclude that Cherek did not receive a fair trial. Accordingly, I would reverse and remand for a new trial.
I also feel compelled to voice my disagreement with how the trial judge handled Cherek’s motion for a new trial. I am well aware of the high standards that must be met in order for a new trial to be granted pursuant to Fed.R.Cr.P. 33. See United States v. Hedman, 655 F.2d 813 (7th Cir.1981). And it may well be that the evidence Cherek had to offer (the $34,000.00 worth of cancelled checks) would not have likely led to an acquittal even if there was a new trial. I cannot agree however, that the evidence proffered was immaterial. Again, I feel the evidence is germane to the issue of Cherek’s subjective intent. Specifically, I find it relevant that if the government’s theory is to be believed, even though Cherek had just funneled $34,-000.00 worth of personal assets into the corporation, he wanted a $5,000.00 car so badly that he fraudulently concealed it from the trustee. If he wanted the car that badly, and knew that it belonged to the corporation, he could have just purchased it with part of the $34,000.00 rather than risking jail. Yet Cherek has never once argued that any part of that $34,-000.00 was in payment for the car. Instead he argues that the fact that he was willing to put so much money into a dying business indicates that he would not try to conceal one of the business assets. This *1257 supports his argument that he thought that the car belonged to him.
Nor can I agree with the majority’s conclusion that the post-trial hearing transcript reveals that the trial judge afforded Cherek’s attorney much of an opportunity to argue materiality of the proffered evidence. The transcript reveals that the judge was more concerned with defendant’s due diligence than with the issue of materiality; and yet he refused to allow Cherek to present evidence of diligence. Indeed, the judge admonished Cherek’s attorney when he attempted to explain that he was hoping to show due diligence at that time.
[The Court:] The Court would indicate that certainly many principal stockholders continually put dollars into corporations in an attempt to keep them going with the hope that it’s going to make it. That has no bearing whatsoever on the matter which is presently before the Court; and it would appear to me that it is not your diligence, counsel, that the Court is concerned with but the diligence of the Defendant who now comes to the Court on December 2nd and says, “Look what I found: $34,000 of checks, which I paid to the corporation.”
Certainly those checks were available to the Defendant at the time of the trial, and the Court finds that—
Mr. Staton: Excuse me. May it please the Court, that’s exactly what I was here to prove this morning. They were not available to us at that time.
The Court: Mr. Staton, I think that you can address yourself to this Court in a reasonable manner. The Court is denying the motion, and the Court is indicating to you that there was not the due diligence upon the part of the Defendant, Mr. Cherek. The Court would also indicate to you that his payment to the corporation of those funds would not have a bearing on the particular offense in which he was found to be guilty....
(Tr. 1/4/83 a.m. p. 9-10)
It is unfortunate that we do not have a complete record before us, because there are other aspects of this case that I would like to see clarified. For instance, what little record we do have indicates that the trial judge in his original Judgment and Commitment order recommended that Cherek be granted work release privileges. Yet the same day, the judge issued an amended order eliminating the work release provision. Nothing in the record before us gives any indication for this change of mind, but it may indicate that the judge was somewhat confused about what should be his final disposition of the case. There is, in my opinion, too much confusion surrounding all aspects of this case. In fact it appears that the only one not confused was the prosecutor. He knew that he wanted to put Cherek in jail. He wanted it enough that he argued against answering a simple inquiry of the jury’s and later argued against allowing Cherek to remain free on bond pending this appeal. He even argued against admitting Cherek’s newly discovered cancelled checks into evidence because Cherek’s attorney had failed to conform to the court’s briefing schedule; a schedule which was totally unreasonable since it called for the writing and filing of a reply brief within three days spanning the New Year holiday. It appears to me from the limited record we have that the trial judge was just a little overwhelmed by the over-zealousness of a prosecutor more concerned with putting the defendant behind bars than with giving him a fair trial. Whatever the confusion involved in this case was, in my opinion, it was too great to allow the conviction to stand. I would reverse.