**UNITED STATES of America, Plaintiff,**

v.

**Katie STANLEY, Defendant.**

**No. 83 CR 661.**

United States District Court, N.D. Illinois, E.D.

Sept. 17, 1985.

---

Robert B. Breisblatt, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Gary R. Lorenz, Lorenz & Rankin, Louisville, Ky., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Katie Stanley ("Stanley") some months ago submitted a "Motion for a Modification of Sentence Pursuant to 28 USC 2255" (filed through her counsel) and has late last month filed a pro se supplement to that motion. Because this Court has long been concerned that Stanley was strongly entitled to consideration in human terms but finds herself trapped by procedural rules,[1] it has gone beyond counsel's and Stanley's submissions in an effort to search out a source of possible relief.[2] That effort has been unsuccessful, and the motion is denied.

---

**1.** Appendix 1 to the memorandum opinion and order is the letter this Court wrote to the Warden at Lexington (where Stanley is serving her sentence) after judicial relief in the form of a sentence reduction was no longer available to Stanley because of this Court's loss of jurisdiction under Fed.R.Crim.P. 35. Note 1 to that

Section 2255 is essentially the statutory embodiment of the ancient writ of error coram nobis. Like the Great Writ of habeas corpus, it provides a broad spectrum of grounds for possible relief—in specific terms:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

But judges are duty-bound to act in a responsible manner, and part of that duty is to be bound by the legal limitations on issuance of the writ.

This opinion will explore each potential avenue for relief that has come to mind, whether or not advanced by Stanley or her counsel. Unfortunately extended discussion is not necessary.

### Duress

Two kinds of duress could be implicated in Stanley's situation. Neither works.

First is the most familiar type of duress: a defense to criminal charges under the common law. On that score (emphasized in Stanley's lawyer's original petition) the Section 2255 argument must be that Stanley had such a duress defense, so that her conviction was rendered invalid and hence "the sentence was imposed in violation of the ... laws of the United States."

 But Stanley was sentenced on a plea of guilty. Unbroken authority teaches

---

letter explains the circumstances of Stanley's conviction in skeletal form.

**2.** Special thanks are due this Court's law clerk, Ann Marchaterre, for her work in that respect.

a guilty plea waives all nonjurisdictional defects, so Stanley cannot challenge the legality of the sentence in those terms. *United States v. Rook*, 424 F.2d 403, 405 (7th Cir.), *cert. denied*, 398 U.S. 966, 90 S.Ct. 2180, 26 L.Ed.2d 550 (1970); *Smith v. United States*, 677 F.2d 39, 40 (8th Cir. 1982) (per curiam).

■ Second of the possible duress arguments is one challenging the guilty plea itself, for an essential condition of its validity is "that [defendant's] plea be the voluntary expression of [her] own choice." *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970). But that kind of duress challenge must go to the taking of the plea itself (see *McMann v. Richardson*, 397 U.S. 759, 766–68, 90 S.Ct. 1441, 1446–48, 25 L.Ed.2d 763 (1970)), not to the circumstances causing the underlying crime. And here Stanley clearly cannot surmount *McMann*, which held a guilty plea could not be attacked on grounds a coerced confession had induced the plea. In terms of the constitutional validity of a plea, duress that has allegedly triggered the plea can stand on no different footing from a coerced confession that has had the same result.

### New Evidence

■ Familiar law provides potential Section 2255 relief for newly-discovered evidence that could have averted the conviction. *United States v. Hedman*, 655 F.2d 813, 814–15 (7th Cir.1981). But in addition to other requirements the petitioner "must show that due diligence on [her] part could not have revealed the evidence prior to trial" (*id.* at 815). By definition Stanley knew the facts constituting the claimed duress before trial—her whole thesis is that the duress occasioned her criminal conduct, and the most recent manifestation of that duress is what she says caused her to change her plea on the eve of submission of the case to the jury.

### Ambiguity or Illegality of Sentence

Stanley's pro se supplement claims her sentence is ambiguous. That argument simply reflects the effect of legal language on a person unaccustomed to dealing with it. In fact the sentence was clear indeed:

1. Each of counts One, Ten and Eleven has a concurrent term of three years in the custody of the Attorney General. That is the term of imprisonment Stanley is now serving.

2. Each of the other counts (Counts Two, Three, Four, Five, Twelve and Thirteen) involves a probationary term of five years, to begin when Stanley completes her actual period of imprisonment under Counts One, Ten and Eleven.

Stanley is (perhaps understandably) simply unaware of what is meant by "the imposition of sentence is hereby suspended" (part of the language of the probationary sentence). At the time Stanley was sentenced 18 U.S.C. § 3651, which controlled the granting of probation, was entitled "Suspension of Sentence and Probation," and it directed any court placing a defendant on probation to "suspend the imposition or execution of sentence." All "suspension of imposition" meant was that no sentence of commitment would be set by the court when the defendant was originally before it, but a period of probation would be specified. If the probationary period then elapsed without a problem, the criminal charge involved in the probationary sentence would become discharged by service of probation, but if probation were revoked during its term, the court could set a sentence of commitment on the charge at that time.

Relatedly Stanley argues:

Instead of the five (5) years the petitioner in essence is serving an eight (8) year sentence, three (3) years longer than allowable under the law.

What Stanley has done is to add the commitment period to the probationary term and claim that constitutes an illegal consecutive sentence. Two short answers reject that argument:

1. Stanley's reference to 18 U.S.C. § 3584(a) (part of the Comprehensive

Crime Control Act of 1984) is inapt, for her sentence was imposed under prior law. No provision comparable to Section 3584(a) existed in the old law (and in fact the new provision will not take effect until 1986).

2. Even if Section 3584(a) *were* applicable (as it is not), it would not help Stanley. That section deals only with multiple terms of *imprisonment,* and that does not affect a situation such as Stanley's, in which there is one term of imprisonment and one term of probation (not two terms of imprisonment). Besides that, Section 3584(a) leaves it entirely up to the judge to impose either concurrent *or* consecutive terms, with the single exception that consecutive terms are prohibited where one of the crimes was an "attempt." None of the charges to which Stanley pleaded guilty was an attempt charge, so this Court would have been free to impose consecutive sentences anyway.

### Conclusion

Stanley's situation evokes sympathy, and this Court has done whatever it could to ask consideration from the Bureau of Prisons (which is now the only possible source of relief available to Stanley). Sympathy, however, is not a legitimate motivation for this Court to bend or break the legal rules it must follow. Stanley's Section 2255 motion is denied.

### APPENDIX 1

October 10, 1984

Warden Robert Elsea
Federal Correctional Institution
P.O. Box 2000
Lexington, Kentucky 40511

Re: Katie Stanley

9–2332–024

Dear Warden Elsea:

Katie Stanley has asked that I write in her behalf requesting that the Bureau of Prisons exercise its discretion in favor of an early release to a halfway house, so that she can resume working to support her family (I understand a job is available to her). At this point her husband's unemployment insurance coverage is about to terminate and, given his age and limited skills, prospects of further employment are remote.

Mrs. Stanley's crime was that of defrauding a CETA program for black children of something in excess of $150,000. That program was run by the Chicago Catholic Archdiocese, and she had substantial supervisory responsibility over the project in which she was involved. Although the crime was a serious one and merited the substantial sentence I imposed,[1] I found the reasons she advanced post-trial[2] were plausible. Unfortunately the Chicago Police did not really conduct an extensive investigation of the claimed extortion to which Mrs. Stanley said she was subjected, and the federal authorities did not interest themselves in the matter despite my urging that they do so.

Because my own jurisdiction to reduce Mrs. Stanley's sentence under Rule 35 ended after 120 days, and because the factual matters had not then been substantiated, I did not grant a Rule 35 motion for reduction. At the same time I can say that the crime was totally out of character with Mrs. Stanley's past conduct, that there is no indication of any of the fraudulently

---

**1.** Mrs. Stanley was one of four defendants, all of whom stood trial for something more than a week. On the day before the case went to the jury, Mrs. Stanley unexpectedly changed her plea from not guilty to guilty. According to her explanation given later at the time of sentencing, she was indeed guilty of the fraud but had engaged in the scheme under serious threats to her and members of her family from the El Rukn street gang, to whom she turned over all

the proceeds of the fraud. Her sudden guilty plea was occasioned by anonymous threats that had just been made on the life of the Catholic priest who was going to be a witness for her at the trial.

**2.** See the attached Fed.R.Crim.P. ("Rule") 35 motion filed on her behalf.

obtained funds having been retained by her or her family and that her story sounded both sincere and plausible.

In my judgment Mrs. Stanley would pose no threat to society upon her return to it. If the Bureau can exercise its discretion in her favor, I should recommend that it do so.[3]

Thank you for your attention to this matter.

Sincerely,
/s/ Milton I. Shadur
Milton I. Shadur

MIS:wb

cc: Mrs. Katie Stanley

---

**3.** Of course I understand the decision is not yours, but I send this letter to you for transmittal to the appropriate authorities.