UNITED STATES of America, Plaintiff-Appellee,

v.

Paul E. MARTEL, Daniel G. Martel and Pace Development, Inc., Defendants-Appellants.

UNITED STATES of America, Plaintiff-Appellee,

v.

PACE DEVELOPMENT, INC., Defendant-Appellant.

Nos. 85–1249, 85–1250.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 6, 1986.

Decided June 5, 1986.

Stuart R. Lefstein, Katz, McAndrews, Durkee, Balch & Lefstin, Rock Island, Ill., for defendants-appellants.

L. Lee Smith, Asst. U.S. Atty., Gerald D. Fines, U.S. Atty., Springfield, Ill., for plaintiff-appellee.

Before CUDAHY, FLAUM, and EASTERBROOK, Circuit Judges.

FLAUM, Circuit Judge.

A defense contractor and its two principal corporate officers were convicted by a jury of making false statements and conspiring to defraud the United States, in connection with fraudulent billings submitted to the government. In addition, the contractor, pursuant to a separate indictment, was convicted of the misdemeanor offense of illegally supplementing a government employee's salary. The defendants appeal the conspiracy and false statement convictions on the basis of alleged evidentiary errors and improper prosecutorial conduct at trial. The contractor challenges the misdemeanor conviction because the contractor was charged in the indictment only with the felony of unlawfully compensating a government employee, and it claims that the misdemeanor was not a lesser included offense of that felony. After review of each of these claims, we affirm all of the convictions.

I. *The Fraudulent Billing Charges.*

Pace Development, Inc. is headquartered in East Moline, Illinois with additional offices in Oklahoma, New Jersey, and New York. During the time period relevant to this case, Pace's president and vice-president were, respectively, Paul Martel and his son Dan. The company produces technical manuals for commercial clients and, beginning in 1972, produced technical manuals for the United States Army Arsenal at Rock Island, Illinois. Pace operated on a timecard system, whereby employees kept

track of the hours they spent by completing timecards that included hours worked and numbers which corresponded to the various client projects. The data from these timecards was entered into the company's computer payroll and billing system, and employees were paid on the basis of the system's compilation of their total hours worked. Commercial clients and, until 1979, the Army were billed on a piecework basis, rather than on an hourly basis.

In 1979, Pace signed a new contract with the government that changed Pace's compensation basis on military projects from piecework to hours billed. This change allegedly created problems for Pace because due to the continuing nature of the government work, Pace's practice had always been to continue devoting employee time to government work even during the interim between an old contract's expiration and a new contract's effective date. Under the old piecework billing system, Pace apparently would continue to produce work for the government during this interim and simply would wait to submit the work for payment until the new contract was in effect. According to the defendants, the 1979 contract presented a "mechanical" billing problem: employees devoting hours to the government project during the interim could not create timecards reflecting time spent on the military account because there technically *was* no current military account in effect. Thus, after the 1979 contract became effective, Pace faced the possibility that it would remain uncompensated for work done between the prior contract and the 1979 contract, and between the 1979 and subsequent contracts.

Against this backdrop, Pace began to submit invoices to the government based on altered timecards. The government demonstrated, and the defendants do not dispute, that from late 1979 until September 1980 the Martels changed certain timecards of employees performing commercial work in order to make it appear that those employees had worked instead on the military accounts. The government argued that the invoices based on altered time-

cards inflated Pace's compensation, since it was paid for military work that it did not perform. The defendants claimed that the company was merely attempting to receive compensation for military work that had been performed but for which it could not create timecards at the time the hours actually were incurred.

The government charged Pace and the Martels with one count of conspiring to defraud the United States in violation of 18 U.S.C. § 371 by submitting false billing statements and receiving money for labor that was "not performed as stated." The three defendants also were charged with five counts of making false statements as to material facts in violation of 18 U.S.C. § 1001. The Martels each were acquitted on two of the false statement counts and were convicted of the conspiracy and remaining false statement counts. Pace was convicted on all charges except one false statement count.

The defendants raise the following claims that they allege warrant reversal of their convictions: (1) the trial court erroneously admitted an ambiguous letter as evidence of intent; (2) the court allowed the government to introduce irrelevant rebuttal evidence and engage in improper cross-examination and closing argument; (3) the court refused to instruct the jury on the element of materiality in the false statement charges; and (4) the court failed to answer a question posed by the jury during its deliberations. We will address these in turn.

A. *The admission of evidence.* The government's conspiracy to defraud case rested in part on proof that the defendants' practice of altering timecards was not an innocent method of recouping time actually spent on military matters. To this end the government sought to introduce a letter to Paul Martel from a Pace employee working out of the Rochester, New York office. The letter seemed to support the government's assertion that the defendants had conspired to defraud the government out of

funds to which Pace was not entitled. The letter read:

Dear Paul:

I am enclosing copies of monthly progress report forms that will be sent to you the first of each month on both MARTA and NECIP.[1] I will be getting reports from Mel and Jeff, and from these reports will give a report on both projects' progress.

In my monthly projection of work I will be giving you a report on actual hours projected for NECIP and hours that will be needed to be charged to NECIP. I had talked with you about this previously. I would like for Mel to handle this number charges [sic] and coordinate this thru me, but know that you need Military charges. Your needs for charges will definitely override what is needed on NECIP, but would like to be informed of these charges to Mel's NECIP report so my report to GRS will not conflict. I am definitely aware of the problems we got into with MARTA by changing charge hours; but feel we can keep this under control if as few people as possible are aware of what we are doing. I do not want the people working for Mel aware of this. I prefer that Mel keep a true picture of time actually spent on NECIP. The manner of handling this will have to be your decision.

*Letters of transmittal* will be handled as always. They will be generated by Mel with copies forwarded to your attention for billing purposes. There is no need to notify anyone a week ahead that the letter is forthcoming, since no actual billing can be done until the actual transmittal is completed. Transmittals for NECIP will be handled by my writing the letter, sending it to Mel; then when ready to ship, Mel will fill in that date. All transmittals will be coordinated and controlled by Mel.

I hope these methods will satisfy everyone's needs and keep confusion to minimum.

Yours truly,

C.A. Mott

Contract Administrator

The government introduced evidence demonstrating that Mott was the supervisor of the Rochester office who also supervised Mel Parkhurst, an employee in the East Moline office whose subordinates' timecards frequently were altered. Although Mott admitted during his testimony that he wrote the letter and sent it to Paul Martel, he also testified that the letter had nothing to do with altering military timecards and, indeed, that he was unaware of any altering. Mott stated further that the purpose of the letter was merely to ensure accurate accounting of commercial time and that the statements "but know that you need military charges" and "your needs for charges will definitely override what is needed in NECIP" reflected his understanding that at the East Moline office, military work had top priority.

The defendants objected to the letter's admissibility on the basis of relevance under Rules 401 and 402 of the Federal Rules of Evidence, claiming that the trial court was required to accept as true Mott's uncontroverted testimony that the letter had nothing to do with altering timecards. Nevertheless, the court admitted the letter into evidence, finding that it was relevant to the issues of the defendants' intent and motive. The defendants continue their argument on appeal, asserting that the court was bound to accept Mott's explanation and therefore committed error when it allowed the jury to speculate on the letter's meaning. The defendants attempt to bolster this argument by making reference to the parol evidence rule. The defendants also make a belated attempt to attack the letter's admissibility on the ground of hearsay.

1. According to the record, MARTA, NECIP, and GRS referred to nonmilitary projects handled primarily by the Rochester office.

Bearing in mind that our role in reviewing evidentiary rulings lies in determining whether the trial court abused its discretion, *see, e.g., Hamling v. United States,* 418 U.S. 87, 124–25, 94 S.Ct. 2887, 2911–12, 41 L.Ed.2d 590 (1974); *United States v. Hyman,* 741 F.2d 906, 913 (7th Cir.1984); we find these arguments to be without merit. First, the trial court was in no sense bound by Mott's innocent explanation of the letter. Indeed, a rule requiring a trial judge to accept as true a witness's testimony would eviscerate the jury's historic function of assessing the credibility of witnesses. *See, e.g., United States v. Jordan,* 722 F.2d 353, 359 (7th Cir.1983); *United States v. Garcia,* 562 F.2d 411, 414 (7th Cir.1977). Moreover, the trial judge acted with sound discretion when he determined that the letter was relevant because the letter on its face created legitimate inferences which made the defendants' intent to defraud a more or less likely proposition. *See, e.g., New Jersey v. T.L.O.,* —— U.S. ——, 105 S.Ct. 733, 745–46, 83 L.Ed.2d 720 (1985). For example, the letter clearly made reference to Pace's past practice of changing hours on client accounts for both commercial and military projects, and the phrase "but know that you need military charges" is consistent with the government's theory of the case. In addition, the letter's reference to the need for secrecy and to problems Pace had encountered in previous situations involving changed hours at least suggests that the scheme—whatever he was referring to—was not entirely above board.

Finally, the trial court correctly determined that the jury was entitled to consider this documentary evidence along with testimony of the defendants' witness that attempted to put the letter in a different light. The restrictions embodied in the parol evidence rule simply are not applicable here, *see United States v. Kreimer,* 609 F.2d 126, 132–33 (5th Cir.1980); in fact, this criminal context is the very antithesis of the situation in which parties to a contract have crystallized their agreement within a document. Therefore, the court did not abuse its discretion when it determined under Rule 401 that the letter was relevant to intent and motive and delegated to the jury the task of weighing the plausibility of Mott's explanation against the inferences raised by the letter.

We hold further that the letter is not barred by the rule against hearsay. We note at the outset that the defendants' posture regarding this issue is somewhat confusing. In their opening brief, the defendants make what can only be interpreted as a hearsay argument, claiming that the trial court erred when it failed to hold a *Santiago* hearing [2] to determine whether the letter was admissible as a co-conspirator's statement under FRE 801(d)(2)(E). Confronted by the government's observation that they waived their hearsay objections by failing to object on that ground at trial, the defendants respond in their reply brief that the discussion of Rule 801(d)(2)(E) relates somehow to the issue of relevance, and that they were not in fact claiming a hearsay error. In spite of this confusion, we will treat the defendants' brief as having made the hearsay argument. The record compels the conclusion, however, that the defendants failed to object at trial to the letter's admission on the basis of hearsay, and they therefore have waived their opportunity to raise this issue. Even had the issue been raised, however, the letter clearly would have been admissible against Pace, at least, as "a statement by [a party's] agent or servant" under FRE 801(d)(2)(D), a point the defendants seem to acknowledge in their brief. We therefore reject the defendants' challenge to the trial court's decision to admit the Mott letter.

**B.** *Rebuttal, cross-examination, and closing argument.* The defendants next complain of the trial court's alleged failure to keep out certain government rebuttal evidence and to prevent the govern-

**2.** *United States v. Santiago,* 582 F.2d 1128 (7th Cir.1978), requires the trial court to make a preliminary determination based on evidence before a co-conspirator's hearsay statement can be admitted against a defendant.

ment from engaging in improper cross-examination and closing argument. The rebuttal evidence apparently was introduced in response to Paul Martel's testimony that he had never thought of altering timecards until he hired an accountant, Robert Couch, in 1979. According to Martel, Couch learned of the problem of recouping military time and came up with the idea of altering timecards. Couch died before this case went to trial. Dan Martel similarly testified that timecards never were altered before Couch was hired, unless they contained errors. In its rebuttal case, the government called a former Pace employee to the stand, who testified that before Couch was hired Paul Martel had instructed her to alter the project codes on her timecards from one military account to another. Another Pace employee testified that she, too, was aware of the Martels' practice, before Couch's employment, of altering timecards in order to move labor charges from one depleted military contract to another that still had funds remaining. The defendants claim that since this testimony did not involve alterations of commercial timecards in order to create military timecards, which was the subject of the charges against the defendants, the evidence was irrelevant and improper on rebuttal.

Our review, however, reveals no abuse of discretion by the district court. Rebuttal evidence can properly be offered in order to "explain, repel, counteract or disprove the evidence of the adverse party." *United States v. Finis P. Ernest, Inc.*, 509 F.2d 1256, 1263 (7th Cir.), *cert. denied*, 423 U.S. 893, 96 S.Ct. 191, 46 L.Ed.2d 124 (1975). Since the Martels had testified that they never had altered timecards before Couch advised them to do so, the government's rebuttal testimony that they had indeed altered timecards prior to that time directly contradicted their story. Moreover, the fact that the previous alterations had not been done for the exact same purpose did not make the rebuttal testimony irrelevant, since that testimony made less probable the Martels' defense that they had naively relied on Couch's assurances that altering

timecards would be an effective and proper method of recouping time. We therefore affirm the district court's decision to admit the rebuttal evidence.

▇▇▇ Similarly, we refuse to reverse on the basis of the government's assertedly improper cross-examination and closing argument. The defendants allege that the government engaged in improper innuendo during cross-examination when it questioned Robert Bowery, a government employee charged with Pace in the separate indictment. Bowery had testified that Pace had paid for a trip he took to St. Louis. The government asked Bowery whether he recalled telling an FBI agent "that at one point ... you overheard Paul Martel tell a Pace employee that Pace was going to be able to recoup their expense ... by billing fraudulent hours to the government." Bowery denied making this statement and the government offered nothing to prove that the statement had been made. Although the defendants correctly point out on appeal that it is error for a party to raise a prejudicial innuendo in cross-examination without having a basis in proof, they neglected to make this argument in the trial court and failed to move that the court instruct the jury to ignore the question. As a result, they waived their right to complain of the possible error. *See, e.g., United States v. Harris*, 542 F.2d 1283, 1307–08 (7th Cir.1976), *cert. denied*, 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (1977) (defendant waived argument by failing to object and challenge existence of factual predicate; situation did not constitute plain error). Moreover, the examining party does not necessarily have a duty to introduce the factual predicate for a question in the absence of an inquiry by the court or the opposing party, and we will not ordinarily impute bad faith to a party's failure to volunteer its factual basis. *Id.* Therefore, the defendants' claim of error regarding the cross-examination cannot be sustained.

▇▇▇ In closing argument the government's attorney stated, "If you have been

jurors before, there probably were cases that you have sat on that were more exciting than this. I will guarantee you one thing, you will never sit on a case that is more important to the taxpayers of this nation." The defendants claim, as they apparently argued to the district court before the government actually delivered its final remarks, that this constituted an improper appeal to the jurors' pecuniary interests. We agree that this argument was meant to pique the pecuniary interests of the jurors and, as such, was definitely improper. *See e.g., United States v. Falk,* 605 F.2d 1005, 1011–12 (7th Cir.1979); *United States v. Trutenko,* 490 F.2d 678 (7th Cir.1973). It was, however, an oblique, isolated remark and in the context of this case had little likelihood of affecting the outcome of the trial. Accordingly, it constituted harmless error. *See, e.g., United States v. Green,* 786 F.2d 247, 255 (7th Cir.1986); *United States v. Mazzone,* 782 F.2d 757, 762–64 (7th Cir.1986); *Falk,* 605 F.2d at 1012.

■ C. *Instruction on materiality.* The defendants tendered to the court a jury instruction on materiality, an element of the section 1001 false statement charges. The court refused to give an instruction on materiality, holding that issue to be one of law and finding the alleged misrepresentations to be material. Although they cite no cases to support their position, the defendants argue on appeal that the court erred when it "prevented [them] from arguing the critical issue of materiality." Our review of the cases reveals very little disagreement on the proposition that materiality of statements under section 1001 is an issue of law within the province of the trial judge. *See, e.g., United States v. Abadi,* 706 F.2d 178, 180 (6th Cir.1983) (reviewing treatment of materiality in the circuits). We hold therefore that the trial court did not err when it withheld this issue from the jury.

■ D. *Response to jury question.* After hours of deliberation, the jury sent out a message with two questions. In the first question the jury asked, "Is there a difference between 'defraud' and 'willful intent to defraud'?" The second question was, "Does the reason for recouping of money have any bearing on the charge of conspiracy [in] Count I?" The court discussed the questions and appropriate responses with the parties and, after deliberation, answered "No" to the first question. To the second question the court made no direct response, but sent the jury copies of the instructions pertaining to the conspiracy charge and to the definitions of "willfully and knowingly." The defendants objected to this procedure and maintain that since the court had an obligation to respond, its failure to do so constituted reversible error.

We disagree that the trial court erred when it handled the matter in this fashion. While the court does have a duty "to strive conscientiously to clear up any confusion," reviewing courts leave to the sound discretion of the trial judge the extent and character of its response. *United States v. Papia,* 560 F.2d 827, 843 (7th Cir.1977); *see also, e.g., United States v. Castenada,* 555 F.2d 605, 611 (7th Cir.1977). This circuit has held that the trial court does not necessarily abuse its discretion when it refuses to give an answer to a jury question that is potentially misleading. *Papia,* 560 F.2d at 843. *See also United States v. Cherek,* 734 F.2d 1248, 1252 (7th Cir.1984). We have recognized that in certain situations, it may be more appropriate for the court to reread portions of the instructions rather than attempt to frame an independent answer. *Cherek,* 734 F.2d at 1252–53; *Papia,* 560 F.2d at 844. This case presents that situation. The jury asked a question that was not susceptible of an unqualified answer, and the judge was well within his discretion in determining that the instructions carefully crafted by the parties themselves ·may have been less confusing and potentially less risky than what the court could come up with on such little notice.

Since we conclude that none of the above arguments has merit, we affirm the conspiracy to defraud and false statement convictions of all three defendants.

## II. *The Unlawful Compensation Charge.*

Pace alone was charged in a separate indictment with unlawfully giving compensation to a government employee in violation of 18 U.S.C. § 203(b). The government attempted to prove at trial that Pace had compensated Robert Bowery, an employee of the Army's Rock Island Arsenal, for services Bowery rendered to Pace. The proof centered around Bowery's relationship with Pace while a government employee and a trip that Bowery took at Pace expense. Bowery apparently had worked closely with Pace and approved the invoices that company submitted to the Army for payment. In April, 1980, Bowery sought funds from the Army to attend a metric conversion seminar in St. Louis, Missouri. The Army refused to authorize payment for the trip, but Bowery attended the seminar anyway, in the company of Paul Martel and other Pace employees. The government demonstrated that Bowery's airfare and accommodations were arranged and paid by Pace. The defendant produced testimony, however, indicating that Bowery advised Paul Martel that he would reimburse Pace for the cost of his trip, although both Bowery and Martel subsequently forgot about the matter and the reimbursement was never accomplished.

At the close of the case, the court instructed the jury that if it did not find Pace guilty of the offense charged, it could consider convicting Pace of the lesser included offense of supplementing a government employee's salary in violation of 18 U.S.C. § 209. The jury then returned a verdict of acquittal on the section 203(b) charge and guilty on the section 209 offense. Pace filed a motion in arrest of judgment under Rule 34 of the Federal Rules of Criminal Procedure, asking the trial court to arrest the judgment of conviction since the indictment did not charge Pace with an offense under section 209, and since section 209 does not constitute a lesser included offense of section 203(b).

It is clear that a defendant need not be charged with a lesser included offense in order to be found guilty thereof. *See, e.g., Sansone v. United States,* 380 U.S. 343, 350, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882 (1965); *United States v. LoRusso,* 695 F.2d 45, 52 n. 3 (2d Cir.1982) ("[b]ecause all the elements of a lesser-included offense are by definition comprised within the greater offense, the grand jury in charging the greater has also charged the lesser"), *cert. denied,* 460 U.S. 1070, 103 S.Ct. 1525, 75 L.Ed.2d 948 (1983); F.R. Crim.Pro. 31(c). Pace contends that it was not convicted of a lesser included offense of the offense charged. Once again, however, an argument was waived by failure to object at the trial level. The defendant not only failed to object to a lesser included offense instruction, but also effectively cut short the court's inquiry about the propriety of such an instruction. Just as the court asked the prosecutor whether section 209 indeed constituted a lesser included offense of section 203(b), defense counsel tendered its own version of a lesser included offense instruction, which was accepted by the government and submitted to the jury. Under these circumstances Pace cannot be heard to complain now that the instruction was given in error, *see, e.g., United States v. Kuecker,* 740 F.2d 496, 503–04 (7th Cir. 1984); *United States v. Torres,* 733 F.2d 449, 458 (7th Cir.1984), or, had it chosen to make this argument on appeal, constituted plain error. *Cf. United States v. Bowman,* 679 F.2d 798, 799–800 (9th Cir.1982); *United States v. Keeble,* 412 U.S. 205, 212–14, 93 S.Ct. 1993, 1997–99, 36 L.Ed.2d 844 (1973) (court can instruct on lesser included offense if defendant so requests even though it lacks jurisdiction over that offense).

It will be noted that three of the arguments discussed in this appeal were waived by the defendants' failure to object at the trial level to alleged errors, and we regret the harshness of this result. It must be emphasized, however, that the rule of waiver arises not from the dictates of arbitrary formalism, but from the practical necessities of an expensive system of adversarial adjudication. For the most part, parties

are themselves responsible for the protection of their rights, and they must seek in the first instance to vindicate those rights at a time when errors can be corrected at least cost: during trial. *See Kuecker,* 740 F.2d at 503. This rule has particularly significant implications to criminal defendants: since criminal appeals are, by their very nature, much more frequently brought by defendants than by prosecutors, defense attorneys must exercise the greater degree of vigilance. Defense counsel must not allow prosecutors to win cases by losing them for their clients.

In sum, we dismiss the defendant's assertion that the trial court erred when it allowed a lesser included offense instruction, and we find that, viewed in the light most favorable to the government, the evidence was sufficient to convict Pace of the section 209 offense. Accordingly, we affirm the conviction.