**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Mark S. TISHBERG,**
**Defendant–Appellant.**

No. 87–3121.

United States Court of Appeals,
Seventh Circuit.

Argued May 24, 1988.

Decided Aug. 24, 1988.

Gerald P. Boyle, Gerald P. Boyle S.C., Milwaukee, Wis., for defendant-appellant.

Melvin K. Washington, Asst. U.S. Atty., Patricia J. Gorence, U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before POSNER and COFFEY, Circuit Judges, and WILL, Senior District Judge.[*]

WILL, Senior District Judge.

Mark S. Tishberg, ("Tishberg") defendant-appellant, was indicted on three counts of tax evasion, violations of 26 U.S.C. § 7201, for filing false tax returns (failing

---

* The Honorable Hubert L. Will, Senior Judge of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

to disclose a portion of his total income) for the years 1982, 1983 and 1984. At the conclusion of the government's case, Judge Evans denied Tishberg's motion for judgment of acquittal. The jury convicted him on all three counts. He was sentenced to 30 days incarceration to be followed by two years probation, fined $15,000 and assessed costs. Tishberg appeals his conviction, arguing that there was insufficient evidence to support the jury's verdict. We affirm.

### Facts

The relevant facts are undisputed. Tishberg was employed by Towne Realty, Inc. from 1972, when he was age 23, through the tax years in question. In September 1984, he left to attend law school on a full-time basis. From 1973 through 1984, Tishberg worked for Towne Realty's insurance department which operated as a sole proprietorship under the name Joda Services. The defendant's father was the President of Towne Realty, Inc.

Joda Services did not have a separate payroll. Instead, employees were normally paid with checks drawn on the accounts of Towne Realty or one of its related companies: Unicare Services, Inc., Job Lot, Inc. and Zilber Services, Inc. Tishberg received salary checks and expense reimbursements from more than one company.

Tishberg asked for and was granted a raise in his salary for 1982, and later for 1983 and 1984. The raise was granted by Ervin Daskow, Towne Realty's Insurance Director, and approved by Tishberg's father. In order to conceal this increase from other Towne Realty employees, Tishberg received his additional salary with checks drawn on Joda Services' bank account.

Other than during March 1982, Tishberg received two salary checks per month from Towne Realty and Unicare Services during 1982 in the amounts of $1,034.38 or $1,046.53, reflecting his net base salary. Tishberg deposited the checks into any one of the three bank accounts he and his wife maintained. He also received and deposit-

ed $10,000.00 from Joda Services in 1982, in monthly checks of $500.00 or $1,000.00, representing his additional salary.

Tishberg and his wife filed a joint tax return (which they prepared without assistance) in 1982. On their IRS 1040, they listed total compensation of $34,873.00 and appended two W–2 statements, one from Unicare showing income of $6,344.00 and one from Towne Realty showing income of $28,528.78. The $10,000.00 in additional salary received from Joda Services was not reported on the 1982 federal tax return. Joda Services did not provide Tishberg with a W–2 statement or any statement reflecting the additional income earned and received in 1982. In addition, no withholdings were made from these payments during 1982.[1]

In 1983, Tishberg received salary checks twice a month from Towne Realty in an amount between $1,046.53 and $1,096.93, again representing his net base salary. He also received checks from Joda Services each month in the amount of $1,000.00 or $1,500.00, totalling $14,000.00, representing his additional salary. In 1984, Tishberg received salary checks twice a month from Towne Realty or Zilber Limited in amounts in excess of $1,096.00. He also received one check in the amount of $213.70. Again, in 1984, he received monthly checks from Joda Services, totalling $13,500.00, representing his additional salary. Tishberg only worked for nine months during 1984. All checks received in 1983 and 1984 were deposited into the same three accounts maintained by him and his wife.

Tishberg and his wife filed joint tax returns (again prepared without assistance) in 1983 and 1984. Like their 1982 return, these returns did not reflect Tishberg's additional salary received from Joda Services. The 1983 IRS Form 1040 reported net income of $35,394.64 and the 1984 Form 1040 reported net income of $47,328.36. Tishberg's net income in 1983 including the salary from Joda Services actually totalled $49,394.64. This same figure for 1984 was

---

1. Tishberg also received statements from Zilber Services (Schedule K–1's) reflecting his invest-

ment income from joint ventures. He reported this income on his 1982 federal tax return.

$60,828.36. Appropriate W–2 statements received from Towne Realty and Zilber Services were appended to the 1983 and 1984 returns.[2] W–2 statements reflecting income from Joda Services were not received by Tishberg, nor were they sent to the IRS. Likewise, no withholdings were made from the additional income during 1983 and 1984.[3]

There is conflicting evidence as to Tishberg's intelligence and particularly what accounting and finance skills he possesses. It is undisputed, however, that he had attended college, obtained a bachelor of business administration (BBA) degree in accounting, worked briefly as a junior accountant with a public accounting firm after college and started in 1972 in the accounting department of Towne Realty. After leaving Joda Services in September 1984, he successfully completed three years of law school. There is no suggestion, therefore, that he is incompetent or was unaware of his duty to file accurate and truthful tax returns.

Tishberg received a letter from IRS agent Lynn Miller in 1985 indicating that his 1983 tax returns were being audited. He attended a meeting in her office to which he brought requested documents. There is a dispute as to Tishberg's reaction when Miller showed him copies of the Joda Services checks and asked him why this income was not reported. Specifically, the parties disagree on whether Tishberg admitted that he had knowingly omitted income from his tax return or was surprised and indicated he would pay whatever was owed. Tishberg, while denying its accuracy, does not challenge on appeal the admissibility of Miller's testimony.

### Standard Of Review

We must determine whether Tishberg's conviction was supported by sufficient evidence that, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original), *reh'g denied,* 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126; *United States v. Conley,* 826 F.2d 551, 556 (7th Cir.1987).

### Analysis

Under 26 U.S.C. § 7201, the government must prove: "(1) willfulness, (2) existence of a tax deficiency, and (3) an affirmative act constituting an attempt to evade or defeat payment of tax." *United States v. Foster,* 789 F.2d 457, 459 (7th Cir.1986), *cert. denied,* 479 U.S. 883, 107 S.Ct. 273, 93 L.Ed.2d 249.[4] Tishberg contends that there was insufficient evidence of his intent to conceal taxable income.

■ To establish a willful intent to defeat or evade the tax, the government must prove that Tishberg filed the tax returns with knowledge that he should have reported more income than he did. *United States v. Walsh,* 627 F.2d 88, 91 (7th Cir. 1980). Circumstantial evidence alone may be used to establish the defendant's intent. *United States v. Schiff,* 612 F.2d 73, 77–78 (2d Cir.1979). Since individuals rarely announce an intent to violate the law, circumstantial evidence is almost always the only way to determine intent.

■ Tishberg initially claims that he merely overlooked the additional income received from Joda Services which was not reported ($10,000.00 in 1982, $14,000.00 in 1983 and $13,500.00 in 1984) since it was insignificant in comparison to the total de-

**2.** In 1984, Tishberg received checks from both Zilber Services and Towne Realty. Payments from both companies, however, were combined on one W–2 form.

**3.** In 1983, Tishberg again received forms (Schedule K–1's) for his share of certain partnership income. He reported this income on his 1983 return.

**4.** 26 U.S.C. § 7201 provides the following:

Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of prosecution.

posits to all of his accounts during those years: $137,854.09 in 1982, $160,954.03 in 1983 and $112,053.47 in 1984. These deposits included funds received from his father as gifts and other nontaxable sources. Tishberg made several transfers of $1,000.00 between his accounts during the years in question and contends that the $1,000.00 Joda Services checks were routine transactions which did not alert him to the fact that they were reportable income. In addition, he argues that because the Joda Services checks were usually deposited and not cashed, this reflects no intent, or attempt, to conceal the income.

Tishberg also contends that there was no financial reason for him to conceal his income because he was financially secure and his father provided funds when needed. Tishberg's job responsibilities did not change during the years in question. Although he began receiving checks from another source, he maintained only one job and claims that this contributed to his assumption that the W–2 statements he received included all sources of income.

It was reasonable for the jury to believe from all the evidence that Tishberg's omission of his additional income from the tax returns he filed for 1982, 1983 and 1984 was intentional, as opposed to an act of negligence or innocent mistake. The evidence established that: (1) Tishberg knew he was receiving additional compensation for his services—he asked for the raise; (2) he received and deposited the money; (3) the money was not so insubstantial, in absolute terms or relative to his personal wealth and other funds, as to render his omission unintentional as a matter of law; and (4) the money was taxable income which he should have known he had a duty to report.

Towne Realty or Joda Services may also have been culpable for not supplying W–2 forms to Tishberg and for not withholding taxes from his income. Miller's audit of Tishberg began after she audited Joda Services. Certainly Towne Realty and Joda made Tishberg's omission easier and, perhaps, more enticing. That, however, did not relieve him of his duty to file accurate returns.

There was testimony from Agent Miller that, during her audit of his records, Tishberg made statements indicative of his criminal intent. This testimony was supported by Miller's written report, summarizing the audit interview, part of which she prepared two weeks after the audit. Although Tishberg at trial contradicted and denied Miller's testimony and challenged her investigation reports, the jury apparently resolved credibility disputes in Miller's favor. That was the jury's function. Any misrepresentations of the facts by Miller, with respect to Tishberg's admissions in her office during the audit, were subject to cross-examination. Tishberg does not challenge the adequacy of his representation at trial. Nor does he challenge on appeal the admissibility of Miller's testimony.

After his IRS audit, but before being indicted, Tishberg filed an Amended Wisconsin Income Tax Return for 1982, 1983 and 1984 to report the additional income and stated therein that he failed to report this income because he never received a Form 1099, the state tax form analogous to the federal W–2 form. He also prepared amended federal returns but did not file them, following Miller's advice. Tishberg's subsequent conduct may demonstrate a good faith effort to correct his previous mistakes. It was undoubtedly considered by the government in its decision to prosecute and in Judge Evans' sentence. It does not, however, negate the import of his previous action.

One week prior to his trial, the government found that, excluding the $13,500.00 in additional compensation received from Joda Services in 1984 and not reported on his tax return, Tishberg had overstated his 1984 income on the return by $2,957.00. Tishberg urges this as evidence, as he did at trial, of his overall carelessness in preparing his tax returns, as contrasted with a willful attempt to evade tax liability. We find this evidence favorable to Tishberg's defense but sufficiently outweighed by the fact that, in 1984, he asked for and received

the $13,500.00 as a raise in salary but did not report this as taxable income. Moreover, on his 1983 tax return, Tishberg indicated that a $154.00 refund was due to him, exclusive, of course, of the tax on the $14,000.00 of unreported income.

Lastly, Tishberg offers Judge Evans' comments, made during his sentencing, as evidence that he did not intend to evade paying taxes. Judge Evans indicated that the case was a close one to call, which could have gone either way, and may have represented poor judgment on the part of the prosecution in its decision to go forward, based on Tishberg's defense and the small amount of money involved.

■ Tishberg contends that he was prosecuted because he is the son of a wealthy man. The government's reference during closing argument to Tishberg's and his father's wealth did not prejudice the jury so as to deny him a fair trial. *See United States v. Zylstra*, 713 F.2d 1332, 1339-40 (7th Cir.1983), *cert. denied*, 464 U.S. 965, 104 S.Ct. 403, 78 L.Ed.2d 344. The defendant's case may be sympathetic but, like Judge Evans, we are without a legal basis to reverse.

## Conclusion

In sum, there was sufficient evidence for a jury to find beyond a reasonable doubt that the defendant intentionally failed to report a substantial portion of his total taxable income in the three years in question in an effort to evade his tax liability. There are no challenges on appeal to the jury instructions, the admissibility of evidence or the adequacy of the defendant's legal representation. Accordingly, the jury's verdict is

AFFIRMED.