**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert L. JUNGLES,**
**Defendant–Appellant.**

**No. 89–1059.**

United States Court of Appeals,
Seventh Circuit.

Argued May 26, 1989.

Decided May 25, 1990.

Rehearing Denied Aug. 21, 1990.

---

470

Robert L. Jungles, pro se.

Before WOOD, Jr., MANION, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Defendant-appellant, Robert L. Jungles, failed to file income tax returns for the years 1981 thru 1986. Moreover, during this period, Jungles caused various changes to be made in the manner in which he received his wages. He also took certain steps to restructure his finances with the apparent intent of hiding his income from the Internal Revenue Service. As might be expected, the consequence of these actions (and inactions) was a twelve count indictment. Six counts of this indictment charged failure to file income tax returns for the years in question in violation of 26 U.S.C. § 7203 (1986). The remaining six counts charged tax evasion in violation of 26 U.S.C. § 7201 (1986).[1] A jury found the defendant guilty of Counts Two through Twelve of the indictment and the district court sentenced him to an aggregate of six years imprisonment followed by five years probation and a fine of $40,000. Jungles appeals only the convictions and sentence which resulted from the § 7201 tax evasion charges.

## I.

From 1965 to 1980, Robert Jungles was employed as a full-time salesman and part-time manager of The Russell E. Wunderlich Co., Inc. Wunderlich Co. was a family-owned business into which Jungles had married. During all times relevant to this appeal, Russell Wunderlich, the brother-in-law of the defendant, was President of Wunderlich Co. Prior to 1980, Jungles had been paid by Wunderlich Co. like all other Wunderlich employees—that is, on a weekly basis by a check issued in his name. Moreover, as was required by federal law, Wunderlich Co. during this period withheld a portion of Jungles' pay for federal tax

Thomas M. Durkin, Steven Shobat, Asst. U.S. Attys., Chicago, Ill., for plaintiff-appellee.

Dennis Doherty, Chicago, Ill., for defendant-appellant.

1. Count I of the indictment alleging tax evasion for 1981 was dismissed upon motion of the government prior to jury selection.

purposes. This arrangement, however, changed.

In late 1980, Jungles decided that he would no longer pay taxes. After notifying his brother-in-law of this decision, Jungles set out to structure his personal finances in such a manner that his assets and income could not be found. First, Jungles drafted a document modeled as an "Independent Contractor Agreement" and presented it to Russell Wunderlich for his signature. Pursuant to this agreement, Wunderlich Co. committed itself to no longer withholding any portion of Jungles' wages for federal income tax purposes. The agreement also purported to define Jungles' employment relationship with Wunderlich Co. as that of an "independent contractor." Russell Wunderlich testified, however, that Jungles' duties and relationship vis-a-vis the company did not substantially change after the execution of this document. Indeed, he stated that he believed the document to be "a sham," the sole purpose of which was to enable Jungles to avoid having taxes withheld from his paychecks. Jungles testified to the contrary.

In addition to drafting and causing this agreement to be executed, Jungles modified the manner in which his weekly paychecks were issued by the company. Specifically, Jungles requested that Wunderlich Co. no longer issue his checks in the name of "Robert Jungles," but rather in the name of "The Joliet Council of Trusts." This was a bank account which Jungles had recently opened. According to the testimony of Russell Wunderlich, this request was granted in an attempt "to keep peace in the family."

Jungles subsequently changed this request and asked that his salary be payable in cash. Wunderlich granted this request, again in an attempt to maintain family relations. Wunderlich Co.'s bookkeeper and office manager, Rosetta Corp, however, was not as interested in family unity and put an end to this practice in late 1981. Upon her expression of concern with this practice, Jungles' checks were again issued payable to "The Joliet Council of Trusts."

This arrangement lasted until sometime in 1982, when Jungles requested that his checks be made payable to Mid–America Commodity and Barter Association (MAC-BA). This was a clearinghouse for tax protestors and persons who wished to avoid detection by the IRS. Again, Wunderlich acquiesced to this arrangement. Jungles' checks from Wunderlich Co. from 1982 to 1986 were all issued in the name of MAC-BA.

The government also presented evidence that, during a conversation with Russell Wunderlich and Rosetta Corp in December of 1984, Jungles requested that his Social Security Number be removed from the 1099 Reports which Wunderlich Co. sent to the IRS. These reports detailed the withholding on all compensation Wunderlich Co. paid its employees. In a letter to Rosetta Corp following this conversation, Jungles informed the company that he had "officially revoked his Social Security Number." Wunderlich Co. granted this request, but sent a letter to the IRS informing that agency of the reason for the deletion.

Finally, in the summer of 1987, Wunderlich Co. received a subpoena calling for the production of all documents reflecting monies paid to Jungles. When shown this subpoena, Jungles asked that Wunderlich not comply with its request for documents. His concern was that the production of those documents would weaken his case. Wunderlich Co. ignored this request.

II.

Those counts of the indictment which are before this court alleged that Jungles willfully and knowingly attempted to evade and defeat his tax responsibilities in violation of 26 U.S.C. § 7201. Representing himself at trial, Jungles presented a defense which focused on his alleged status as an independent contractor. He argued that he was not an "employee" as the indictment alleged and that, as a result, Wunderlich Co. was in fact the entity responsible for the payment of the taxes in question. On appeal, Jungles again focuses on the "employee/independent contractor" distinction and argues that the govern-

ment's evidence at trial was insufficient to support his convictions under § 7201. Jungles also argues on appeal that various trial court rulings and prosecutorial actions, both independently and cumulatively, deprived him of a fair trial. In the alternative, Jungles argues that his sentence was imposed in violation of his due process right to be sentenced on the basis of accurate information. Our discussion will address each of these contentions and their supporting facts in turn.

### A. Sufficiency of the Evidence under § 7201

Jungles' initial argument with regard to the sufficiency of the evidence focuses on the indictment's allegations that he "caused his employer" to perform various acts in furtherance of his scheme to evade payment of his federal taxes. Specifically, Jungles argues that he did not "cause" his employer to eliminate federal income tax withholdings from his earnings because his act of entering into the "independent contractor agreement" cannot amount to conduct that would mislead or deceive the United States. In addition, Jungles argues that the government did not prove that he was an "employee," as opposed to an "independent contractor," and, as such, did not meet its burden of proof with regard to each element of a § 7201 violation. We find each of these arguments to be meritless.

Our standard of review in this regard is deferential. We are limited to determining, when the evidence is viewed in the light most favorable to the government, whether "*any* rational trier-of-fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original); *United States v. Tishberg*, 854 F.2d 1070, 1072 (7th Cir.1988).

In support of a conviction under § 7201, the government must establish three elements: (1) willfulness; (2) the existence of a tax deficiency; and, (3) an affirmative act constituting an attempt to evade or defeat payment of tax. *Sansone v. United States*, 380 U.S. 343, 351, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965); *Tishberg*, 854 F.2d at 1072. The counts of the indictment under which Jungles was charged with violations of § 7201 clearly set out these three elements.[2] Jungles' challenge to the sufficiency of the evidence focuses on the government's burden in establishing the existence of the "affirmative acts" in furtherance of the scheme. In particular, Jungles questions whether the government proved beyond a reasonable doubt that he "caused" his "employer" to do anything as is alleged in the second and third affirmative acts of the indictment.[3]

Jungles' initial argument is that there is not sufficient evidence to show that he caused his employer to eliminate federal income tax withholdings from his paycheck. In support of this claim, Jungles argues that the only evidence to buttress the government's position was the fact of the "independent contractor agreement." According to Jungles, this was a lawful

**2.** These counts, alleging violations of § 7201 for each of the years in question, read generally as follows:

During the calendar year [year in question], ROBERT L. JUNGLES, ... received taxable income of approximately [dollar amount]; upon said taxable income he owed the United States of America income tax of approximately [dollar amount]; he was required ... to make an income tax return to the Internal Revenue Service and to pay said income tax; well knowing the foregoing facts. ROBERT L. JUNGLES, ... from at least [date] until the return of this indictment ... did willfully and knowingly attempt to evade and defeat the said income tax due and owing the United States of America by:

(1) Failing to file a federal income tax return (Form 1040) with the Internal Revenue Service for the calendar year ...;

(2) Causing his employer to eliminate required federal income tax withholding from his earnings; and

(3) Causing his employer to issue his earnings checks payable to cash, the Joliet Council of Trusts and Mid–America Commodity and Barter Association;

In violation of Title 26, United States Code, Section 7201.

**3.** Jungles does not challenge the government's evidence with regard to his failure to file income tax returns for the years in question.

activity which cannot serve as an "affirmative act" to support a conviction under § 7201. Jungles is wrong.

■ Jungles' assertion that the "independent contractor agreement" is the only evidence which supports the government's position ignores other circumstantial evidence which was presented at trial. First, it is apparent that this agreement came solely at the request of Jungles shortly after he had expressed his intention to cease paying taxes. Indeed, the evidence shows that Jungles drafted the terms of the agreement. Moreover, Russell Wunderlich testified that he entered into the agreement only to maintain family unity and that he believed the agreement to be a "sham," the whole purpose of which was to assist Jungles in avoiding detection by the IRS. More damaging to Jungles' argument, however, is the fact that the act of entering into this "independent contractor agreement," even though a lawful activity in-and-of-itself, can serve as an "affirmative act" supporting a conviction under § 7201 if it is done with the *intent to evade income tax.* This result is supported by *Spies v. United States,* 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943), a decision which Jungles cites in support of the opposite conclusion. *See also United States v. Conley,* 826 F.2d 551, 556 (7th Cir.1987); *United States v. Copeland,* 786 F.2d 768, 770 (7th Cir.1985).

■ In *Spies,* the Court distinguished the government's burden in proving the misdemeanor of "willfully failing to pay tax when due" under § 145(a) of the Revenue Act of 1936 from that which the government must show to support the felony of "willfully attempting to defeat or evade a tax" under § 145(b) of that same statutory provision. The Court concluded that the difference lay in the word "attempt," which requires something more than proof of a simple nonpayment of tax. *Id.,* 317 U.S. at 498–99, 63 S.Ct. at 368; *Conley,* 826 F.2d at 556; *Copeland,* 786 F.2d at 770. The Court expressly noted, however, that Congress had not limited or defined the methods by which such an "attempt" could be achieved and declined the

invitation to constrict the Congressional provision that an attempt could be achieved "in any manner." *Spies,* 317 U.S. at 499, 63 S.Ct. at 368. Rather, the Court concluded that if a tax-evasion motive plays a part in any conduct which could be described as an "attempt" to evade the payment of taxes, then the offense of tax evasion was made out. *Id.* Under the facts which are presented for our review, a rational jury could reasonably conclude that Jungles' decision to enter into the "independent contractor agreement" was motivated by his desire to evade the taxes which he owed. Other evidence presented by the government at trial certainly supported that conclusion. Accordingly, we find that the evidence with regard to this "affirmative act" was sufficient to support the conviction. *Cf. United States v. Dack,* 747 F.2d 1172 (7th Cir.1984) (per curiam) (employee who became independent contractor in attempt to avoid payment of taxes; conviction upheld on other grounds).

Jungles' next argument addresses the discrepancy between the terms of the indictment and the government's proof at trial. As we previously noted, the indictment under which Jungles was charged refers to him "causing his employer" to bring about various results with respect to the manner in which he was paid. Jungles' position at trial was that he did not have an "employer" as the indictment alleged in that he had become an "independent contractor" by virtue of the agreement executed between himself and Wunderlich Co. Based on this distinction, Jungles argues on appeal that the government did not prove beyond a reasonable doubt the elements of the offense.

This challenge raised by Jungles presents a hybrid issue. In addressing this claim, we must examine not only government's obligation under *In re Winship,* 397 U.S. 358, 365, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970), to sustain its burden of proving beyond a reasonable doubt each element of the offense, but also Jungles' fifth amendment right to be tried only on charges brought in the grand jury indictment. *Stirone v. United States,* 361 U.S.

212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960). As the issue has been raised, however, the two are necessarily intertwined.

■ The government's burden in supporting a conviction under § 7201, as we stated earlier, requires proof beyond a reasonable doubt of three elements: (1) willfulness; (2) the existence of a tax deficiency; and (3) an affirmative act constituting an attempt to defeat or evade tax. *Sansone*, 380 U.S. at 351, 85 S.Ct. at 1010. There is ample proof in the record to support the government's burden under the first two elements. The issue which Jungles raises addresses the government's ability to prove the third element—the existence of an affirmative act. Three affirmative acts were alleged. First, the indictment alleged that Jungles willfully failed to file tax returns for the years in question. This fact is beyond dispute. The mere failure to file a tax return—a misdemeanor under 26 U.S.C. § 7203—cannot by itself support a conviction for tax evasion under § 7201. *Spies*, 317 U.S. at 499, 63 S.Ct. at 368, 87 L.Ed. 418 (1943); *see also Copeland*, 786 F.2d at 770 (in order to support conviction under § 7201, government must prove some act of "commission" in addition to the willful "ommission" which supports conviction under § 7203). In light of this fact, the government also alleged that Jungles caused his "employer" to assist him in concealing his income. *See, e.g., United States v. Edwards*, 777 F.2d 644, 650 (11th Cir.1985), *cert. denied*, 475 U.S. 1123, 106 S.Ct. 1644, 90 L.Ed.2d 189 (1986) and 475 U.S. 1123, 106 S.Ct. 1645, 90 L.Ed.2d 189 (1986) (act of concealing income can constitute the willful commission of an act supporting a conviction for tax evasion under § 7201). Herein lies the fifth amendment indictment issue raised by Jungles—that is, did the government prove beyond a reasonable doubt that Jungles caused his "employer" to do anything? Without regard to the technical distinction between Jungles' status as an "employee" or "independent contractor," the evidence is overwhelming that he caused Wunderlich

Co. to do various things in furtherance of his scheme. In light of this distinction, however, the question becomes one of "variance" between the terms of the indictment and the proof at trial. Or, to state the issue in terms of the proof and allegations of this case, does the possibility that Wunderlich Co. might not in fact be Jungles' "employer" in the technical sense amount to an "amendment" to the charges brought in the indictment such that Jungles' fifth amendment grand jury right has been violated? We do not believe that it does.

Not surprisingly, Jungles directs this court's attention to the Supreme Court's decision in *Stirone, supra*, and argues that the discrepancy between proof and allegation amounts to an "amendment" to the charges contained in the indictment. If Jungles were correct, *Stirone*, along with *United States v. Miller*, 471 U.S. 130, 138, 105 S.Ct. 1811, 1816, 85 L.Ed.2d 99 (1985), would require a reversal. We do not believe that Jungles is right, however, in that we conclude that the discrepancy to which Jungles refers amounts to only a "variance" between the facts alleged in the indictment and the evidence produced at trial.[4]

The distinction between a "variance" and an "amendment" is not always easy to discern. Indeed, Professor Wright has noted that only a "shadowy distinction" exists between the two. C. Wright, Fed.Prac. & Proc. § 516 (1982). The accepted example of that which amounts to an impermissible "amendment" is presented by the Court's decision in *Stirone, supra*. The petitioner in *Stirone* had been charged under an indictment that alleged a violation of the Hobbs Act as a result of interference with interstate shipments of sand. At trial, in addition to proving interference with interstate sand shipments, the government proved interference with interstate shipments of steel. Moreover, the court's instructions permitted the jury to base its conviction on either form of interference. In reversing the conviction, the Court con-

---

**4.** For purposes of this argument, we will assume that the evidence presented at trial did not prove beyond a reasonable doubt that Jungles

was in fact an "employee" as that term is normally understood.

cluded that this amounted to a fatal "amendment" to the charges brought in the indictment in that the potential bases upon which the accused could be convicted had *broadened* from those presented in the indictment. 361 U.S. at 217, 80 S.Ct. at 273. The impact of the government's proof together with the trial court's jury charge was to "subject the defendant to prosecution for interference with interstate commerce which the grand jury did not charge." *Id.* at 218, 80 S.Ct. at 274.

In *United States v. Miller, supra,* the Court distinguished between that which constitutes an "amendment" to the charges brought in the indictment—e.g., *Stirone*—and that which would be only a "variance" between the allegations in the indictment and the proof at trial. Describing the latter, the Court referred to situations in which the "trial evidence narrowed the indictment's charges without adding any new offenses." *Compare, United States v. Williams,* 798 F.2d 1024, 1030 (7th Cir.1986) ("a variance occurs when the terms of the indictment are unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment").

Although it is clear that the evidence presented in Jungles' trial did not "narrow" the charges brought in the indictment, it is also apparent that the potential bases upon which Jungles could be convicted were not "broadened" by the technical distinction between Jungles' status as an "employee" or "independent contractor." That distinction is merely a matter of semantics in this context. Simply put, the fact that Jungles was engaged by Wunderlich Co. *in some capacity* is the fact of consequence as far as his burden in defending against the tax-evasion charges was concerned. Wunderlich Co. was the entity from which Jungles received his pay on a weekly basis and, as such, the entity to which the indictment was necessarily referring when it stated that Jungles caused his "employer" to do various things in furtherance of the tax-evasion scheme. The actual nature of Jungles' working relationship vis-a-vis Wunderlich Co. was immaterial. The salient fact was that he caused Wunderlich

Co. to do various things in furtherance of his tax-evasion scheme. As such, the distinction to which Jungles points cannot be said to be a distinction that "charges an offense not charged in the indictment." *Cf. Stirone, supra.* For this reason, we conclude that the discrepancy was at most a "variance" from the terms of the indictment.

A "variance" between the proof and allegations is subject to the harmless error rule. *United States v. Kuna,* 760 F.2d 813, 817 (7th Cir.1985). This fact was recognized by the Supreme Court over fifty years ago when it stated:

> The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused. The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense.

*Berger v. United States,* 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935). Or, to state it differently, " '[a] variance between allegations and proof is not fatal unless the defendant has been thereby deprived of an adequate opportunity to prepare a defense or has been exposed to a risk of being prosecuted twice for the same offense.' " *United States v. Casey,* 835 F.2d 148, 152 (7th Cir.1987) (quoting *Kuna,* 760 F.2d at 819). The variance between the proof and allegations which Jungles has alleged did not jeopardize either of these recognized protections. For these reasons, we conclude that any variance was harmless.

Mr. Jungles cannot be heard to complain that the distinction between an "employee" and an "independent contractor" deprived him of an adequate opportunity to properly defend against the government's tax-evasion charges. The fact is that, except for the technical wording of the indictment, it

does not matter whether Jungles was an "employee" or "independent contractor" for purposes of proving tax evasion under § 7201. He would be required to pay taxes under either scenario. More important for the tax-evasion charge, however, is the fact that his employment status did not implicate his intent in causing Wunderlich Co. to cease withholding taxes and issue his checks to various third parties. Jungles was (or should have been) on notice that even an "independent contractor" is required to pay taxes and cannot affirmatively act to evade those taxes. Jungles was not deprived of an opportunity to properly defend against the government's charges. Nor has the variance between proof and allegation exposed him to a risk of multiple prosecutions for this one offense. In light of this harmless error and the otherwise overwhelming nature of the evidence presented against Jungles, we reject his sufficiency of the evidence claim.

### B. *Fairness of the Trial*

In attacking the fairness of the trial, Jungles raises a number of separate issues; some more worthy of discussion than others. We will begin by addressing the latter.

Jungles' initial challenge to the fairness of the trial focuses on various trial court rulings. Jungles contends that the impact of these rulings was to direct a verdict against him on the factual issue of whether he was an "independent contractor" and, in so doing, to impermissibly prevent him from presenting his theory of defense.

 The first of the challenged trial court rulings excluded the testimony of Jungles' expert witness. According to Jungles, this testimony would have supported his theory that he was an "independent contractor." [5] A *voir dire* examination of Jungles' expert revealed that his testimony would have consisted in part of a recitation of legal principles surrounding the "independent contractor" relationship which Jungles wished to establish. In addition, Jungles expert would have rendered an opinion, based on a hypothetical set of circumstances, that a person in Jungles' position would be considered an "independent contractor." The trial court sustained the government's objection to this testimony on the grounds that it was not the proper subject of expert testimony. *Marx & Co., Inc. v. Diners' Club, Inc.*, 550 F.2d 505, 509–10 (2nd Cir.), *cert. denied*, 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977) cited with approval in *Jason's Foods, Inc. v. Peter Eckrich & Sons, Inc.*, 774 F.2d 214, 216 (7th Cir.1985). To the extent the expert would have simply recited legal principles surrounding the "independent contractor" relationship, the trial court's exclusion of this testimony was proper. With regard to the "opinion" concerning Jungles' employment status which the expert might have rendered, the exclusion of this testimony was improper. Fed.R.Evid. 704. We believe, however, that the error was harmless in light of our determination that Jungles' employment status was not a defense to the tax evasion charges. Thus, we reject Jungles' challenge to the exclusion of this testimony.

 Next, Jungles argues that the trial court erred in refusing to instruct the jury on his theory of defense.[6] To repro-

---

5. Jungles apparently offered this testimony to rebut the testimony of the government's expert, Gary Cantzler, who, in the course of his expert testimony regarding Jungles' tax liabilities for the years 1982–1986, stated that he believed Jungles was an "employee" for purposes of federal income tax calculation.

6. Jungles' proffered instructions read:
(1) If you find from the evidence that the accused was an independent contractor and was responsible for his own taxes, then you must find that he was not employed as the term is used in the income tax laws ... and

especially the withholding tax law, 26 U.S.C. §§ 3402 and 3403 and therefore you must find him not guilty.
(2) You are instructed that the federal income tax witholding [sic] tax is in the nature of a direct tax upon the property commonly known as wages of employees and the employer is liable for this tax whether or not he deducts the tax. If you find that the defendant was not an employee in the sense that is commonly used in reference to a person who must follow given instructions as to how to perform his job, then you must find that the withholding tax was not due from Wunderlich Door and neither it nor the defendant was

duce these proposed instructions is to give some indication as to their merit and, concomitantly, the propriety of the district court's reluctance to present them to the jury. Not only must a "theory of defense" instruction have an evidentiary basis, it must also correctly state the law upon which the defendant seeks to rely. As we have previously stated, "a 'defendant in a criminal case is entitled to have the jury consider any theory of the defense which is supported by law and which has some foundation in the evidence, however tenuous.' " *United States v. Kelley*, 864 F.2d 569, 572 (7th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 55, 107 L.Ed.2d 23 (1989) (quoting *United States v. Grimes*, 413 F.2d 1376, 1378 (7th Cir.1969)). This is far from an absolute right to expound on theories unrelated to relevant law or the evidence. The instructions which Jungles proposed do not meet either of the evidentiary prerequisites.

■ Finally, Jungles argues that the court erred in excluding portions of his cross-examination of the government's expert, Gary Cantzler. Jungles wished to question Mr. Cantzler regarding his defense theory that Wunderlich Co. should have withheld taxes if Jungles was an "employee" of the company. The trial court sustained the government's objections to this line of questioning on the grounds that the information sought was irrelevant to any issue in the case. Fed.R.Evid. 401. We find no abuse of discretion in this evidentiary ruling. *United States v. Hooks*, 848 F.2d 785, 793 (7th Cir.1988). The tax liabilities of Wunderlich Co. were not relevant to Jungles' attempts to evade his own personal income tax.

As a second challenge to the fairness of his trial, Jungles points to alleged impropriety in the government's collateral impeachment of his credibility. While cross-examining Jungles, the prosecutor implied through a series of questions that Jungles had committed perjury in a prior proceeding before the United States Tax Court by filing an affidavit in support of an *in forma pauperis* petition which stated that he

liable for the tax and hence no tax can have

could not afford the filing fee in his civil proceeding. Jungles denied making any false statement in the affidavit, but admitted during the course of that cross-examination that he had received $1,000 per week from Wunderlich Co. during the six months prior to filing that affidavit. On appeal, Jungles argues that this attempt at collateral impeachment was improper in that the government failed to "prove up" or "perfect" the allegation of perjury by establishing that the statement in the *in forma pauperis* affidavit in fact was false. The government argues that the purpose of this line of questioning was to attack Jungles' credibility.

■ As a general rule, the scope of cross-examination regarding the credibility of a witness is within the sound discretion of the trial court. *United States v. Holt*, 817 F.2d 1264, 1274 (7th Cir.1987). In that Jungles did not object to this line of questioning at trial, however, we review these allegations only for plain error. *United States v. Martel*, 792 F.2d 630, 636 (7th Cir.1986); *United States v. Harris*, 542 F.2d 1283, 1307–08 (7th Cir.1976), *cert. denied*, 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (1977).

■ In *Harris* we stated, "[i]t is improper conduct for the Government to ask a question which implies a factual predicate which the examiner knows he cannot support by evidence or for which he has no reason to believe that there is a foundation of truth." 542 F.2d at 1307. Contrary to Jungles' assertion, however, the government does not have a duty in every case to introduce the factual predicate for a potentially prejudicial question posed on cross-examination, particularly in situations such as this where there is a reasonable suspicion that the circumstances underlying the question might be true. *See id.* This exception to the general rule receives even more play where there is no contemporaneous objection to the cross-examination. *Martel*, 792 F.2d at 636. Although the government did not affirmatively prove the factual predicate underlying its question,

said to be evaded.

the "reasonable suspicion" which informed the government's exploration of this credibility issue was amply presented through Jungles' admission that he had been paid over $30,000 during the six months preceding his filing of the affidavit. This fact, together with our precedent establishing that the government is not required in all situations to affirmatively prove the factual foundation underlying its impeachment questions, convince us that this collateral impeachment did not constitute error—plain or otherwise.

Jungles' final argument with regard to the fairness of the trial focuses on statements made by the prosecution during the course of closing argument. Specifically, Jungles argues that the prosecutor's closing argument contained three instances of prejudicial impropriety. We will examine each of these in turn.

 First, Jungles argues that the prosecutor improperly advanced his personal opinion during the course of his rebuttal argument as to the merit of Jungles' "independent contractor" theory of defense. Taken out of context, the prosecutorial comment reads:

> Forget about the independent contractor, if you want to give him the benefit of the doubt. *I don't think he [defendant] is right on that. I think* its clear that that was his intention to avoid taxes. *And Russ Wunderlich was right* when he characterized it [the independent contractor agreement] as a sham (emphasis added).

Even if these remarks were improper, Jungles failed to object to them at trial and we accordingly review the issue only for plain error. *United States v. Spivey*, 859 F.2d 461, 466 (7th Cir.1988). Under such a standard of review, we will reverse a conviction "only if a miscarriage of justice would otherwise result." *United States v. Hernandez*, 865 F.2d 925, 928 (7th Cir.1989). The overwhelming nature of the evidence against Jungles in all other respects makes it clear that there has been no "miscarriage of justice" as a result of these prosecutorial remarks. Nor in context do they appear to rise to the level of prosecutorial miscon-

duct. We reject Jungles' challenge to the fairness of the trial on this ground.

 During the course of its closing argument, the prosecution also stated three times that Jungles was a "liar." Jungles adds this to his list of prosecutorial statements which allegedly deprived him of a fair trial. Once again, to the extent these statements were improper, we review them only for "plain error" in light of the fact that Jungles did not object to these remarks during the course of closing argument. *Spivey*, 859 F.2d at 466. We conclude, however, that these statements were not improper.

Both Jungles and the government, during closing argument, were free to draw any reasonable inferences from the testimony which had been presented. Moreover, each was permitted to comment on the credibility of the witnesses. With these groundrules in place, we have previously noted that it is not impermissible for a prosecutor to refer to the defendant as a liar in closing argument, provided the references are not excessive. *Id.* The three references to which Jungles directs this court's attention, all of which were shown in the transcript to appear within eight lines of one page of the twenty-page closing argument, were clearly not excessive. Moreover, they were directed at Jungles' credibility. As such, we conclude that these were not improper arguments.

 Finally, Jungles argues that the prosecution misstated the law during closing argument when it advised the jury that proof of any of the three alleged acts of evasion stated in the indictment could independently support a conviction. Initially we note, contrary to Jungles' assertion, that the government was not required to prove all three of the alleged acts. *See Miller*, 471 U.S. at 136, 105 S.Ct. at 1815, citing *Turner v. United States*, 396 U.S. 398, 420, 90 S.Ct. 642, 654, 24 L.Ed.2d 610 (1970) (A jury verdict returned on an indictment which charges several acts in the conjunctive will stand if the evidence is sufficient with respect to any of the acts charged). Jungles is correct in pointing out, however, that his § 7201 conviction cannot rest simply on proof that he failed

to file tax returns as was alleged as the first "affirmative act" in the indictment. *See Copeland*, 786 F.2d at 770. In this regard, the statement on the part of the prosecution to the contrary was improper. The scope of our review, however, is again limited to that of "plain error" as a result of Jungles' failure to object to this argument at trial. We have in this case the overwhelming nature of the evidence with regard to the additional "affirmative acts" which the government alleged in the indictment. To this is added the court's correct instruction to the jury concerning the role of opening and closing statements. Finally, and most importantly, the government's burden with regard to the § 7201 counts was properly set forth in the court's final instructions. In this context, we conclude that the prosecutor's erroneous statement of the government's burden did not amount to plain error.

### C. *Sentencing*

 During the course of the sentencing hearing, two opposing views were presented as to the propriety of Jungles' criminal activity. Jungles attempted to characterize his activity as part of a noble tradition extending back to the times of this country's Founding Fathers. The trial judge did not adopt that view and indicated:

> You profess to view yourself as some sort of patriot. What you actually are is precisely the opposite. If all Americans behaved as you behave, there would be no way for this country to survive. You are guilty of sedition in this Court's eyes. You are a tax cheat. You, Mr. Jungles, are a criminal.

Referring to these remarks by the trial court, Jungles argues that he was sentenced in violation of his due process rights. We find no merit in this argument and dismiss it without any further discussion.

### III.

For all of the foregoing reasons, we AFFIRM Jungles' convictions and sentence.